**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| RAYMOND E. WADKINS JR., )<br>　　　Plaintiff, )<br> )<br>　v. )<br> )<br>ANDREW M. SAUL, Commissioner of the )<br>Social Security Administration, )<br>　　　Defendant. ) | CAUSE NO.: 2:18-CV-407-RLM-JPK |

**FINDINGS, REPORT, AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed on October 29, 2018, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], filed on March 15, 2019. Defendant filed a response on May 1, 2019, and Plaintiff filed a reply on June 7, 2019.

On February 27, 2019, District Court Judge Robert L. Miller, Jr. entered an Order [DE 14] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Commissioner of the Social Security Administration and remand for further proceedings consistent with this Report.

**PROCEDURAL BACKGROUND**

On April 2, 2015, Plaintiff filed an application for supplemental security income, alleging disability beginning September 5, 2013. The application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held on March 22, 2017. On August 24,

2017, the Administrative Law Judge (ALJ) issued an unfavorable decision, making the following findings:[1]

> 1. The claimant has not engaged in substantial gainful activity since April 2, 2015, the application date.
>
> 2. The claimant has the following severe impairments: complex regional pain syndrome of the right lower extremity, degenerative disc disease of the lumbar spine, mild depression, radial nerve palsy in both wrists, and degenerative joint disease in both knees.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, [the ALJ found] that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except no crouching or climbing ladders ropes or scaffolds; occasional kneeling, crawling, stooping, balancing and climbing ramps and stairs; frequent handling and fingering bilaterally; and must avoid environments of concentrated exposure to dangerous machinery and unprotected heights. He can do semiskilled tasks/work but is precluded from skilled work activity.
>
> 5. The claimant is unable to perform any past relevant work.
>
> 6. The claimant was born [in 1974] and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed.
>
> 7. The claimant has a limited education and is able to communicate in English.
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

      10.    The claimant has not been under a disability, as defined in the Social Security Act, since April 2, 2015, the date the application was filed.

(AR 17-26[2]).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision. *See* 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is, in fact, disabled but whether the ALJ's decision "applies the correct legal standards and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g).

Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see* 42 U.S.C. § 405(g). The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White*

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

*v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). "The ALJ also has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted).

## DISABILITY STANDARD

To be eligible for disability benefits under the Social Security Act, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any impairment listed in the regulations as presumptively disabling, (4) whether, if the claimant does not meet a listing, the claimant is unable to perform the claimant's past relevant work, and (5) whether, if the claimant is unable to perform past

relevant work, the claimant is unable to perform any work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

In this appeal seeking reversal of the ALJ's decision, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's RFC under Social Security Ruling 96-8p and erred in evaluating Plaintiff's subjective allegations according to SSR 16-3p. The Court considers each argument in turn.

### A.    Residual Functional Capacity

Plaintiff contends that the ALJ failed to provide an evidentiary basis for his finding that Plaintiff has the residual functional capacity to engage in frequent handling and fingering bilaterally, and that the ALJ failed to account for Plaintiff's limitations in sitting. Plaintiff further argues that the ALJ erred in giving significant weight to the opinion of the state agency consulting physician.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R.

5

§ 416.927(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

*1.     Frequent Handling and Fingering Bilaterally*

The RFC allows for frequent handling and fingering bilaterally.[3] Plaintiff argues that this does not properly account for his limitations due to radial nerve palsy, and that the ALJ erred in

---

[3] The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* defines "handling" as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand, such as to turn a switch or shift automobile gears." SCODICOT App. C.9. It further defines "fingering" as "[p]icking, pinching, or otherwise working primarily with

6

placing significant weight on the opinion of a state agency consultant who did not have the opportunity to review evidence related to this diagnosis. Plaintiff further argues that this error was not harmless because the vocational expert ("VE") testified that all sedentary occupations would be precluded if Plaintiff could only finger occasionally.[4]

The ALJ noted that Plaintiff testified that he has radial nerve palsy at the wrist and uses splints. (AR 21, 48-49). Plaintiff further explained that this condition mostly occurs when he is asleep, can last up to 13 weeks, and that he has had it four times on the left and five times on the right since August 2016.[5] (AR 48-49). In June 2015, an examination of Plaintiff's upper extremities revealed no tenderness, normal range of motion, and no clubbing or atrophy. (AR 855). On May 24, 2016, a treating physician found that Plaintiff had right hand drop at the wrist and right hand weakness, but that Plaintiff could grab objects. (AR 1007, 1011). A neurological examination showed 5/5 muscle strength in the upper extremities. (AR 1011). On May 31, 2016, Plaintiff received treatment in the emergency room for wrist pain and wrist drop on the left. (AR 998). A physical examination revealed wrist drop in both upper extremities. (AR 1000). The clinical impression was left radial nerve palsy, and Plaintiff was treated with a left wrist splint. (AR 1000). On January 26, 2017, Plaintiff was seen for radial nerve palsy and bilateral wrist drop, though he was asymptomatic on the day of his appointment. (AR 1048).

After making the above findings, the ALJ explained that he assigned significant weight to the state agency consulting physician's opinion as to Plaintiff's physical impairments. (AR 24).

---

fingers rather than with the whole hand or arm as in handling." SCODICOT App. C.10. Finally, "frequently" means "from 1/3 to 2/3 of the time." SCODICOT App. ID.

[4] The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* defines "occasionally" as "up to 1/3 of the time." SCODICOT App. ID.

[5] While the ALJ stated in his decision that this date was August 2015, the hearing transcript shows the correct date to be August 2016. (AR 49).

The state agency consultant opined that Plaintiff was limited to a range of sedentary to light work exertionally with additional postural and environmental limitations, and that although Plaintiff could do the lifting and carrying of light work as defined in the regulations, he was limited to sedentary work, which involves walking and standing up to only two hours in an eight-hour workday. (AR 94-97, 100). The ALJ then asserted that that the RFC accommodated Plaintiff's alleged limitations. (AR 25).

The state agency consultant's opinion contained no reference to Plaintiff's wrist impairments, and thus made no mention of potential handling and fingering limitations. This is unsurprising, however, since the opinion was generated in September 2015, before Plaintiff was diagnosed with radial nerve palsy in 2016. (AR 1000). Yet the ALJ never acknowledged that the state agency consultant lacked this information, nor did the ALJ offer any explanation as to why the consultant's opinion should still be given significant weight despite this fact. Affording such great weight to an opinion made without access to more recent medical records indicating a new, relevant diagnosis was error.

The ALJ did not build a logical bridge between the evidence and the RFC regarding Plaintiff's ability to handle and finger bilaterally. This was also error. *Beardsley*, 758 F.3d at 837. This error is compounded by the VE's testimony that sedentary occupations would be precluded if Plaintiff could only finger occasionally. (AR 72). The Court thus recommends that this matter be remanded for proper consideration of Plaintiff's limitations as to his ability to handle and finger bilaterally. Specifically, if the ALJ again assigns great weight to the state agency consultant's opinion, he must explain why this is appropriate despite that consultant's lack of access to medical records containing a relevant diagnosis, as described above.

*2.    Sitting*

The RFC allows for sedentary work, except no crouching or climbing ladders, ropes, or scaffolds, and occasional kneeling, crawling, stooping, balancing, and climbing ramps and stairs. Plaintiff contends that the ALJ failed to explain how the evidence supported his conclusion that Plaintiff could perform work at a sedentary exertional level, which would require sitting for six hours in an eight-hour workday. Plaintiff further argues that the ALJ erred in placing significant weight on the state agency consultant's opinion, which was written without the benefit of more recent medical records.

The ALJ recounted the following evidence regarding Plaintiff's limitations in sitting. Plaintiff alleged he cannot sit for even one hour, and after sitting he needs to stand up and straighten out for 15-20 minutes. (AR 46). In June 2015, an examination of Plaintiff's right lower extremity revealed paresthesia, hypersensitivity, and hyperemia. (AR 855). The examination further showed atrophy of the thigh and osteoporosis, limited movement of the right foot though normal range of motion of all joints, and tenderness and paraspinal tenderness of the lumbar spine. (AR 855). Straight leg raising was negative, neurological examination revealed muscle strength was 4/5 in the lower extremity, and all reflexes were decreased in the right leg by 2/5. (AR 855-56). Plaintiff's diagnoses included reflex sympathetic dystrophy, complex regional pain syndrome type II, dorsalgia of the right foot and calf, sciatica of the right leg, spinal stenosis with lumbar spine pain, osteoporosis of the right ankle, right club foot, hyperalgesia of the right foot and atrophy, muscular atrophy of the right leg, degenerative disc disease of the lumbar spine, antalgic gait using a cane, protein S deficiency, and varicose veins bilaterally of the lower extremities. (AR 856). While an

9

X-ray of the right ankle revealed no abnormalities, a subsequent examination of the right foot and ankle in July 2015 revealed bilateral ankle trace pitting edema. (AR 845, 864).

An MRI of Plaintiff's right ankle on August 1, 2015 showed increased bone marrow signal related to stress related bone marrow edema, and chronic destruction of the anterior talofibular ligament was identified. (AR 963). On August 11, 2015, an examination revealed Plaintiff was unable to stand on toes or heel on the right. (AR 887). Right ankle dorsiflexion and plantar flexion was decreased, there was atrophy noted in the right quadriceps though no hypersensitivity, and there was decreased hair and shiny skin on the right foot. (AR 887-88). The impression was complex regional pain syndrome of the right lower extremity and chronic pain. (AR 888).

On March 22, 2016, an examination revealed limited movement of the right hip, knee, and ankle. (AR 970). Plaintiff was unable to stand on the right foot, heel, or toe, and there was muscle atrophy noted to the right quadriceps. (AR 971). There was decreased hair distribution on the lateral and dorsum part of the foot, which was positive for hyperalgesia and allodynia. (AR 971). The impression was chronic pain, complex regional pain syndrome of the right lower extremity, lumbar degenerative disc disease, lumbar radiculopathy, right foraminal narrowing, and moderate central canal stenosis at L3-L4 vertebrae. (AR 971).

On April 19, 2016, Plaintiff was diagnosed with lumbar degenerative disc disease, lumbar radiculopathy, and lumbar spinal stenosis, and he underwent epidural steroid injections to the right L3-L4. (AR 973). On May 24, 2016, Plaintiff was diagnosed with acute lumbar radiculopathy, and there was knee tenderness medially and crepitus bilaterally. (AR 1011-12). There was also decreased range of motion of the spine, lumbar paravertebral tenderness, and muscle spasm. (AR 1011). Nonetheless, neurological examination revealed 2+ deep tendon reflexes and 5/5 muscle strength in the lower extremities, there was full range of motion with no swelling or deformities

of the peripheral joints, and Plaintiff was able to walk normally without a device. (AR 1011). On August 9, 2016, Plaintiff was seen for complaints of aching, sharp, throbbing, tingling, numbness, and burning pain in the right foot, leg, and lower back. (AR 1030). Plaintiff experienced some relief with medication and injections, though he reported side effects of inability to sleep and lack of appetite. (AR 1030). Plaintiff felt his low back and right lower extremity pain had improved since his previous visit, and a follow-up appointment on September 9, 2016 revealed no change. (AR 1030, 1032).

On October 17, 2016, Plaintiff was diagnosed with lumbar degenerative disc disease and lumbar radiculopathy. (AR 978). He underwent bilateral L3 transforaminal epidural steroid injections, which resulted in two weeks of almost one hundred percent pain relief in Plaintiff's back and some pain relief in his lower extremity. (AR 978, 1037). On November 29, 2016, Plaintiff was diagnosed with chronic pain, chronic regional pain syndrome of the right lower extremity, lumbar degenerative disc disease, and lumbar radiculopathy. (AR 1036). An examination revealed decreased range of motion of the lumbar spine, positive straight leg raising on the right, decreased strength of the right ankle, and an antalgic gait for heel to toe. (AR 1036).

On February 4, 2017, an MRI revealed multilevel discogenic and facet degenerative changes. (AR 1120). At the L2-L3 level there was mild broad-based disc bulge and mild bilateral lateral recess narrowing. (AR 1120). At L3-L4 there was broad-based disc bulge and posterior annular tear, with facet arthrosis, mild thecal sac stenosis, mild bilateral lateral recess narrowing, and minimal bilateral neural foraminal narrowing. (AR 1120). At L4-L5 there was broad-based disc bulge, facet arthrosis, mild thecal sac stenosis, mild bilateral lateral recess narrowing, and mild bilateral neural foraminal narrowing. (AR 1120). At the L5-S1 level there was broad-based

11

disc bulge and facet arthrosis, with mild bilateral lateral recess narrowing. (AR 1120). There was no severe thecal sac stenosis or severe neural foraminal narrowing at any lumbar level. (AR 1120).

After noting this evidence, the ALJ stated that he assigned significant weight to the opinion of the state agency consultant. (AR 24). The state agency consultant opined that Plaintiff was limited to a range of sedentary to light work exertionally with additional postural and environmental limitations. (AR 94-97, 100). The state agency consultant further opined that, though Plaintiff could do the lifting and carrying of light work as defined in the regulations, he was limited to sedentary work, which involves walking and standing up to only two hours in an eight-hour workday. (AR 94-97, 100). But, as discussed, this opinion was formed in 2015 without the benefit of more recent medical records, including those that showed decreased motion, strength, and other degenerative changes. The ALJ never acknowledged this issue, nor did he explain why the state agency consultant opinion should nonetheless be given significant weight. Again, affording such great weight to an opinion made without access to more recent medical records was error. As such, the ALJ failed to build a logical bridge between the evidence and the lack of findings in the RFC that would account for Plaintiff's limitations in sitting. *Beardsley*, 758 F.3d at 837. The Court recommends that this matter be remanded for proper consideration of Plaintiff's limitations as to sitting. Specifically, if the ALJ again assigns great weight to the state agency consultant's opinion, he must explain why this is appropriate despite that consultant's lack of access to medical records containing a relevant diagnosis, as described above.

### B. Subjective Complaints

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's subjective allegations. In making his determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were "not entirely consistent" with the

medical evidence and other evidence in the record. (AR 21). The ALJ further asserted that while Plaintiff alleged significant limitations to his treating sources, significant objective findings were nonetheless not found on evaluation to support the alleged degree of limitation. (AR 24-25). Moreover, the record indicated improvement with treatment. (AR 25). Finally, the ALJ noted that Plaintiff was recommended for treatment with a spinal cord stimulator and a surgical consult, but had yet to follow through. (AR 25).

In making a disability determination, the Social Security Administration will consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id.* The Administration's decisionmaker must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;

(2) Location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;

(6) Other measures taken to relieve pain or other symptoms;

(7) Other factors concerning functional limitations due to pain or other symptoms.

*See id.* § 416.929(c)(3). "[S]ubjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). "Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.* at *11.

13

The ALJ found that the evidence generally did not support the severe degree of Plaintiff's alleged loss of functioning. (AR 24). While Plaintiff testified that he can do nothing for a prolonged period, the ALJ pointed to Plaintiff's additional testimony that he stopped working at the heavy exertional level because he was laid off. (AR 24, 44-46). The ALJ further noted that Plaintiff alleged he can do only minimal sitting, standing, and walking, and yet Plaintiff is able to drive, go to doctors' appointments and out for short trips, and care for his three-year-old daughter. (AR 24). The ALJ found that this level of activity is not consistent with such a limiting functional capacity. (AR 24).

The Seventh Circuit Court of Appeals has often warned against equating the performance of daily activities with the ability to perform full-time, competitive work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as [he] would be by an employer."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Zurawski*, 245 F.3d at 887. Though he made mention of it in reaching his conclusion, the ALJ nonetheless seemed to ignore Plaintiff's testimony that he had difficulty driving with his right foot. (AR 21, 52). And, the ALJ failed to include in its entirety Plaintiff's additional testimony that he does not drive at all during the week precisely because of this issue. (AR 52). Further, the ALJ made no reference to Plaintiff's testimony that while he was indeed able to care for his daughter in some ways, he nonetheless had to rely on his sister to complete certain tasks, such as washing his daughter's hair. (AR 61-62). The ALJ summarized Plaintiff's activities and concluded that they do not support his allegation of inability

14

to perform full-time work, but the ALJ failed to provide the necessary links connecting the one to the other. This was error.

The ALJ's explanation as to Plaintiff's testimony versus the objective findings in the medical record is also lacking, as is the ALJ's explanation of improvement with treatment. While the ALJ's recitation of the medical record included examinations that both corroborated and offered less support for Plaintiff's complaints, the ALJ failed to adequately articulate the precise "significant objective findings" that contradicted Plaintiff's alleged limitations. Further, by the ALJ's own recounting of the evidence, Plaintiff's symptoms improved after certain treatments, but the symptoms subsequently returned at a later date. For example, while Plaintiff experienced almost two weeks of absolute pain relief in his lower back and some pain relief in his lower extremity following steroid injections in October 2016, an examination conducted in February 2017 nonetheless showed degenerative changes. The ALJ also did not appear to consider how frequently such steroid injections could be administered or whether they presented a long-term solution to alleviate Plaintiff's symptoms.

Finally, the ALJ erred in his consideration of Plaintiff's failure to seek recommended treatment. Although administrative law judges are to consider a claimant's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed, they are prohibited from drawing inferences from a claimant's noncompliance or failure to seek more treatment without first inquiring into and considering a claimant's explanation for such a failure. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); SSR 16-3p, at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record [based on a failure to follow prescribed treatment that might improve symptoms] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). For

15

instance, some factors to consider are an inability to afford treatment and the side effects of medication. SSR 16-3p, at *9-10. In this case, the ALJ did not attempt to elicit more information from Plaintiff regarding his failure to seek recommended treatment. Accordingly, the ALJ erred in considering this as evidence contradicting Plaintiff's alleged limitations.

The Court recommends that this matter be remanded for proper evaluation of Plaintiff's subjective symptoms in accordance with all applicable regulations and legal authority. Specifically, the Court recommends that this matter be remanded for proper evaluation of Plaintiff's activities juxtaposed against his ability to perform full time work and Plaintiff's alleged failure to seek recommended treatment, as described above. If the ALJ still finds that Plaintiff's testimony is contradicted by the medical records, the ALJ must properly articulate these contradictions.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15] and **REVERSE** the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor*

*Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

 So ORDERED this 19th day of December, 2019.

            s/ Joshua P. Kolar
            MAGISTRATE JUDGE JOSHUA P. KOLAR
            UNITED STATES DISTRICT COURT